May it please the Court, I am Kristen McLeod-Ball on behalf of Amicus, addressing Timeliness and Jurisdiction in this case. Petitioner's counsel will address the merits. When Petitioner received an order of removal from DHS in 2020, the President of this Court and all of the Courts of Appeals told him to wait before seeking judicial review, that he should seek protection against torture, he should pursue his claim on protection against before an immigration judge, before filing a petition for review. After the Supreme Court's decision in Riley last year, that situation has changed. But for people You know, I did see that in your brief, but wasn't the situation up in the air as to what you do? In other words, there was no guidance from this Court on exactly when you needed to file the petition for review? Or am I mistaken? Is there a case? I think that there was, Your Honor, in Cardozo-Salazar, 932 F. 3rd 704, from this Court in 2019, which was just the year before Petitioner received the DHS-issued removal order. This Court said that the DHS-issued removal order in situations like this, where somebody was going on to fear proceedings, was not the final order of removal, and instead the final order was the ultimate decision from the BIA in fear-based proceedings. So, he was following what this Court suggested he should do, and we acknowledge that's changed. But this case presents what to do with people who were in the pipeline, essentially, at the time, right? They're sort of left in a catch-22. They followed the law, but now a respondent seeks to bar them from having their day in court. Equitable tolling provides an avenue for this Court to address that type of extraordinary situation. It applies here because 8 U.S.C. 1252 B.1 is a run-of-the-mill filing deadline, subject to the presumption in favor of tolling, and it's not rebutted here. Don't you run into the nutraceutical holding, though? Because, quite honestly, the language is exactly the same in the rule as it was in nutraceutical. It's a different rule, but it says, may not file. So, I don't know how you can get around a direct holding of the Supreme Court. So in nutraceutical, the Court was addressing the interaction between federal rules of procedure, not a statute. And the Supreme Court has recognized that in terms of equitable tolling, statutes are special, right? There's this presumption in favor of equitable tolling. So you'll see in nutraceutical, the Supreme Court didn't address the presumption in favor of tolling at all. That's not true, because when the statute is silent, then there's a presumption in favor of equitable tolling, but not when there's a rule that comes in and says you can't have equitable tolling. That situation is not covered in any Supreme Court case of which I'm aware. So, two points, Your Honor. First, I'd like to note that nutraceutical also addressed a different provision of Federal Rule of Appellate Procedure 26 than would be at issue here, if we think that that's impacting 1252b1. The difference does that make? Well, because they were on 1252b1, and this is 1250 — sorry, misspoke — 26b2, which contains an exception for where allowing extensions is specifically authorized by law. And that's where we come back to the importance of the fact that this is a statute — the deadline is in a statute — subject to a presumption in favor of tolling, which this Court has — which the Supreme Court has recognized for decades, is a background presumption that Congress uses when they're creating statutory deadlines. Doesn't this rule, though, also say that the courts can't extend the time to file? Am I wrong about that? The court — the deadline says that they can't extend the time to file unless specifically authorized by law. For 26b2. And you think that — you think silence is expressly authorized by law? I think that in the context of how the Supreme Court has talked about tolling, it is. Because — What about the word express? Specifically. Yeah. Like, when you say — somebody in plain language says, this is expressly authorized, it says it there. That's what the interpretation of that phrase means. And so I'm asking, what is expressed in the statute? What's expressed in the statute is that Congress is presumed, unless they specifically tailor a statute not to provide for equitable tolling, for equitable tolling to operate. But that's a presumption or an implication, not something that's expressed. Oh, I think that the word is specifically authorized by law in the — in this — in the federal rule. And I think that if we turn to some of the cases that recognize that tolling is available — oh, I also realized that I'm now stepping into my co-counsel's time. Counsel, do you wish to address the merits of the claim? Like Petitioner's Counsel will address the merits of the claim. Thank you. May it please the Court, Counsel. I'm Stephen Tholl, representing BP, the Petitioner. So yes, let me jump into what's really at stake in this case, and that's whether a non-citizen DEA informant who assists law enforcement in the investigation and prosecution of drug cartels will face torture without judicial review of their underlying CAT claims. Specifically, Nasrallah v. Barr allows federal courts of appeal to review CAT claims alongside final orders of removal. In this case, the Court needs to go further and look at the decision of the BIA as it is not supported by substantial evidence. One of the key factors in this case is the use of expert witnesses at the trial level. In this case, the immigration judge gave credence to two experts. One was Anthony Fontes, who the judge found qualified as an expert on drug cartels and conditions in Guatemala. He found the opinion persuasive, credible, informative, and helpful to the Court. Similarly, our other expert, Luis Porras, a former DEA narcotics police officer — not found to be an expert in the use of informants in narcotics investigations. Again, the immigration judge found Mr. Porras to be credible, informative, and helpful to the Court. Yet, notwithstanding, he seemed to reject both conclusions of those experts. In fact, in respect to Mr. Porras, he seemed to rely on speculation that it's not supported in the record that BP had indicated that Garcia, who worked for the Zetas cartel, and Coronado, who worked for the Julisco Nuevo cartel, had been stated to be of the same cartel. There is no support in the record for that. Yeah, I want to ask you about that, except for a slightly different avenue, or a slightly different point, which is, is there some merit to the fact that there were two different cartels with which he cooperated? In other words, if he turned on one cartel twice, that might be more dangerous than turning on two cartels once. And that seemed to be underlying a little bit what the immigration judge and the Board were saying, and I'm just wondering what your response is to that. I agree that there were some misstatements in the record, you've pointed those out. Well, I don't think it matters whether it's more than once. I mean, once you cross the line, and you've gone against a cartel, there's retribution. In fact, Luis Porras, the expert on the use of DEA informants, says he has no doubt and can state with 100 percent certainty that whatever criminal organization or cartels that BP had indicated were involved here, there will be retribution against BP. So I don't think it matters the number of instances I think it's just merely the fact that he went into it. Well, for one of the cartels, my understanding is the cartel didn't even know how to contact him or find him. One of the cartels they clearly did. I think it was the one where it was with Garcia, but the other one did not even know how to find him. That may be. However, the situation changes in terms of whether you're in the United States or outside the United States. And it's at that point where you become vulnerable to the retribution of the cartels. I'll reserve whatever additional time we have for rebuttal. Thank you. Thank you, Mr. Thoreau. Ms. Pergolesi. Good morning. Sarah Pergolesi for the government. May it please the Court. I'd like to start with the important and fundamental question of jurisdiction. This Court is one of limited jurisdiction and it always must consider its jurisdiction first and foremost. And here the Petitioner has not challenged a final order of removal, and therefore the Court does not have jurisdiction to hear these ancillary challenges to the cap determination. Is this a jurisdictional rule or is it a claims processing rule? Because I kind of read it as a claims processing rule, which really doesn't matter because the government's raised it. But I just, I want to be sure we have our nomenclature right. I want to be really specific because the Supreme Court in Riley found that the filing deadline was not jurisdictional but mandatory. But I'm talking about the more fundamental and threshold issue of whether there's been a challenge to a final order first and foremost, and that is jurisdictional. And Riley informs that because Riley talks about where a restriction is placed on. I think New Jersuiticals, if a restriction is placed on a filer and not a court, then something is probably more of a claims processing rule than a jurisdictional rule. But in 1252, excuse me. Why wouldn't the consideration of cat relief be something that needed to be taken care of before a final order of removal is put in place? It doesn't need to be, it doesn't happen before the final removal is put in place, but it also doesn't affect the validity of a final order of removal. Basically, to zoom out, a final order of removal, as the Supreme Court has defined it, is an order that a non-citizen is removable and that they be removed from the United States. But a cat determination is based in our treaty obligations not to refoul people who are likely to be tortured. And so it does not ask the question of whether the person can be removed. It only asks the question where they can be removed. It's very limited. It only asks, can they be removed to a place that they are alleging they will be tortured? And so I think a way I like to think about it is that, first and foremost, the faro in this case is a removal order. It asks, as the Supreme Court clearly said in Riley, it asks, can this person, should this person be removed? But the cat determination is a refoulement order. It only asks, are we obligated not to remove them, this person, to Guatemala because he will be likely tortured? And so the Supreme Court has held, and the statute plainly states, that only final orders of removal are reviewable in this court. Section 1252 is a statute that grants the court sole and exclusive jurisdiction over final orders of removal. It also explains cat determinations but doesn't describe them in those terms. And the convention against torture is basically a treaty that we signed on to. But treaties are not self-ratifying. We have to put them into law. And when we did in faro, we did not create independent jurisdiction to review those refoulement orders, those cat determinations. So, under the Zipper Clause, to challenge a refoulement, a cat order, a cat determination, a refoulement order, an applicant must tether that order to a final order of removal. Counsel, I want to ask you a question, and I want to kind of get back to this. So you're arguing that the 30-day deadline is jurisdictional and that the rules from a final order of removal are the ones that limit the equitable tolling. Is that the government's view, the Federal rules? So, again, just to clarify, that an applicant must appeal a final order of removal is jurisdictional, but that they must make that petition for review within 30 days is non-jurisdictional claims processing, but still mandatory and not subject to equitable tolling. That's right. Okay. Yes. And I did also want to point out that even if, again, assuming arguendo, that even if the court were to find that tolling is available, tolling is also not guaranteed. It is, it must be proved by the applicant, and it is rare. And the applicant here really only describes his pursuit of his cat determination, but doesn't explain why after Riley was issued in June, they still waited until the conclusion of their withholding-only proceedings until that cat determination to file a petition for review. Under Stone, there certainly wasn't. Was there anything put in the record about why there was a delay after Riley? No. And that, I guess, no, and maybe it could have theoretically been in the record, but I think the timeline of events render that pretty difficult. The withholding-only proceedings had concluded at the immigration judge level when Riley was issued, and the appeal to the court that now the petitioner has filed a petition for review for was pending shortly after Riley. So many petitioners, in exactly this circumstance, exactly caught in these crosshairs. Do you have any idea of what the scale of that number of people who are in that predicament might be? I don't, but many of them did file within 30 days after Riley filed petitions for review. And I think what's really critical in this case is that there are practical, there are consequences to the Supreme Court's holding in Riley. But that doesn't negate the fact that in Riley, the Supreme Court made clear that the plain text of the statute and reconciling the Court's precedents in Nasrallah, Guzman-Chavez, Monsalvo, and Riley itself necessitated this reading that a cat determination is not a final order of removal. Can I ask you, I just want to ask you the same question I asked the opposing counsel. The predicate here is that this circuit's case law required the petitioner to wait to file the petition for review. I don't read the case law the same way. You kind of have to cobble together some holdings to get there. What's the government's view on that? I also agree that it's ambiguous and it doesn't necessarily say that, and that even the Supreme Court in Guzman-Chavez did at least suggest that this might be where the Supreme Court was going. And I think fundamentally, even setting aside what this Court said before Riley, the Supreme Court in Riley did what the Supreme Court does. It says this is what the law means and has always meant. And so this Court's precedents in that regard can't overrule that or change the fact that that holding from the Supreme Court in Riley has retroactive effects. Again, I acknowledge that the consequences affect this petitioner specifically, but that, again, is not justification to hold that the law has only prospective effect in this case. I also want to just quickly respond to the petitioner's 28-J response to our 28-J about Navarette. While the petitioners say that Navarette was wrongly decided, they don't really offer any explanation for why that decision was not persuasive. And the Ninth Circuit closely hewed to Judge Thomas' concurrence in Riley itself and really looked at the whole landscape of the statutory provisions and really made an effort to harmonize and reconcile Supreme Court precedents about finality. And so I do urge the Court to find that decision persuasive because it certainly does offer a clean understanding of what those statutes mean and how to apply those Supreme Court precedents. And this Court also, while not in the context of immigration law, has held that ancillary jurisdiction has to be derived from some preexisting source of jurisdiction. And I'll file a 28-J for where that exact language comes from because I did find it later. But that's very similar to Navarette, that you can't get pendant jurisdiction if you don't have a challenge to the final order itself. So here, again, the petitioner even still has not offered even a frivolous argument that there is something wrong with the FARO, the only final order of removal in this case. What do you make of the Sixth Circuit decision that we got a 28-J letter about that just came out? I think it addresses the timeliness issue. So that, again, is sort of more of an alternative argument here today from us. It certainly does discuss that there is some ambiguity. There is a lot of statutory language that the Court has considered in different ways when asking whether that language rebuts the presumption of the availability of equitable tolling. And I think our main response is that even if the Court finds that case as persuasive, that here the BP has not offered a substantive argument for why, even if equitable tolling is available to him, why he acted diligently to merit that equitable tolling. On the rule, on the interaction of the rule and the statute, doesn't the rule, if we give credit to the rule, doesn't the rule foreclose the Sixth Circuit's decision? I think that's right. The Sixth Circuit doesn't really, I see I'm out of time. Is it okay if I keep going? You can answer the question. The Sixth Circuit doesn't really address how the statutory text and the rule play together. And your questions to the Petitioner's Counsel, I think, were instructive in that sense, that they should be read together and that this Court is also bound by its own procedural rules. Thank you. Thank you, Counsel. You used up most of your time, but we'll give you an opportunity to respond. Very briefly address jurisdiction. There are two points on jurisdiction. First, the petition for review should be treated as one of a final order of removal, the faro in this case. Both parties treated it as such, and it would not prejudice either party to treat it as such. Second, the statutes, while requiring the petition to be of a final order of removal, nowhere contain a requirement that the substantive challenge within that petition for review is to removability. This Court, the Supreme Court, have long reviewed these types of claims, CAT, withholding, without looking to whether the Petitioner also challenged removability. And the statutes that Respondent purports to have required this were enacted to direct review together, not eliminate review over CAT claims. They were 1252A4 is intended to channel review of CAT claims into the petition for review process, not to prevent it or condition it upon whether there's a challenge to removability. Thank you, Your Honor. Thank you, Counsel. The Court thanks all the attorneys for your participation and argument before the Court this morning. It's been helpful. We'll continue to study the record, render decision. Thank you. Madam Clerk, I believe we have one final argument for the morning. The final argument is Case 25-2881, Deborah Tobacco v. Avera McKinnon.